## CHARLES K. TAYLOR V. STATE.

No. 26,655. December 16, 1953.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) February 17, 1954.

*McCarthy and Haynes, (George S. McCarthy of counsel)* Amarillo, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was charged by indictment with the burglary of a building belonging to C. P. Lamkin with the intent to take therefrom certain corporeal personal property, etc. Upon the trial he was convicted by the jury and given a term of two years in the state penitentiary and sentenced accordingly.

It appears from the evidence that Mr. Lamkin owned a certain building called the Lakeside Drive-in, located about six miles from the court house of Potter County; that on the 20th day of February, 1953, Mr. Reynolds, a night watchman, heard a noise therein about 2:15 o'clock in the morning which sounded like the breaking of glass. His attention was directed to the back door and its outside entrance which had been locked up to that time. This woke him up, and he then heard a hammering of some kind on the door. He saw something coming through the hole which had been knocked in the door. Mr. Reynolds possessed himself of his shotgun and walked toward this door, and the hammering ceased. He then saw what looked to him to be someone's hand reaching in to unlock the door from the inside, whereupon he shot at it and it was withdrawn. In a moment or two a car was driven off. This gun was a single-bar-

reled shotgun loaded with No. 4 shot. Soon after the car drove away the officers came up and took charge of the situation. They found a hole in the door and some broken glass; also a quantity of shot which was offered in evidence as State's Exhibit No. 1.

Later on during the night an airman of the United States Air Force stationed at Amarillo, was on duty as a member of the Air Police. Between 2:00 and 3:00 o'clock that morning, or approximately 2:30 o'clock, he saw Charles K. Taylor, the appellant. "His hand had been shot, or something had happened to it; it was mangled, looked to me like; a piece of his thumb hanging off." It was bleeding a lot. Appellant requested the witness to call an ambulance. Upon being asked how he had hurt his hand he said, "It had been shot."

There was also testimony from another member of the Air Force, a mechanic, who testified that he saw the appellant about 6:45 o'clock on the morning of February 20, 1953. Appellant was in the hospital at that time. The witness saw the doctor who waited on the appellant in the surgery and saw him take some shot out of the appellant's hand. The shot thus taken out of the appellant's hand was introduced in evidence as State's Exhibit No. 2.

A further witness, Mr. Duncan, testified that he had occasion to see the appellant between the hours of 3:00 and 3:30 o'clock on February 19th and loaned him his automobile which appellant promised to return during the night. The next morning after the witness had awakened and gone outside he saw his automobile standing near the house but did not see the appellant. The automobile was partially in his garage. At that time he noticed some blood spots on the outside of the car, on the fender, and some on the car seat, approximately in the center thereof. There was not a large amount of blood, but the spot was about two and one-half or three inches in diameter. There were also spots of blood on the front fender, a little on the rear fender, and also on the door.

There is only one informal bill of exception in the record and that relates to a witness, Mr. Watson, an assistant district attorney, who testified in substance that the shot taken out of the door of Mr. Lamkin's building and the shot taken out of the hand of the appellant were of the same size and of the same weight, and were designated as No. 4 bird shot. This was

objected to by the appellant because "we are completely outside the record on all of this, and don't want to clutter up the record with this kind of testimony, and I want my bill of exceptions to it." As we understand it, he just objected to it although it does show from his testimony that the witness did not claim to be an expert on ballistics. However, we are of the opinion that it does not take an expert to tell how much six bullets weigh, nor to compare six bullets on the one hand with the size of six bullets on the other hand. We think this is a matter of ordinary knowledge and observation rather than a matter relegated to the realm of a ballistician.

Under the facts presented herein and the charge on circumstantial evidence given by the court, we think that it was sufficiently shown that appellant was the man who placed his hand within this closed building and effected an entry in an unusual manner. See Articles 1393 and 1394 of Vernon's Ann. P.C., and the annotations thereunder.

Under the circumstances herein set forth, we think the jury was correct in finding appellant guilty of the burglary of this building.

No reversible error having been presented by the record, the judgment will be affirmed.